IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANITA FAYE STRODE | ) |
| | ) |
| v. | ) No. 2:15-0028 |
| | ) Judge Sharp/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) |

To:     The Honorable Kevin Sharp, Chief Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's applications for disability insurance benefits and supplemental security income, as provided under Titles II and XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 19), to which defendant has responded (Docket Entry No. 21). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 11),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## I.  Introduction

Plaintiff filed her applications for benefits on January 19, 2012, alleging disability onset as of January 10, 2012, due to chronic obstructive pulmonary disease

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

(COPD), anxiety, degenerative disc disease (DDD), osteoporosis, and thyroid problems. (Tr. 22, 206) Her applications were denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on November 13, 2013, when plaintiff appeared with counsel and gave testimony. (Tr.41-63) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until February 19, 2014, when he issued a written decision finding plaintiff not disabled. (Tr. 22-33) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since January 10, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: panic disorder with agoraphobia, bipolar I disorder, chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently, with normal breaks in an 8-hour day, can sit for 6 hours and stand and/or walk for 6 hours; can occasionally climb ladders, ropes and scaffolds; can frequently climb ramps and stairs; can frequently balance, stoop, kneel, crouch and crawl; and can tolerate occasional exposure to fumes, odors, dusts, gases, and poor ventilation. The claimant cannot sustain interactions with the public; can sustain limited

>    superficial interactions with co-workers and supervisors; and can set goals and adapt to infrequent, gradual change.

6. The claimant is capable of performing past relevant work as a poultry chucker, Dictionary of Occupational Titles (DOT) No. 525.687-074, classified as light, unskilled work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 10, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 24, 26, 28, 31, 33)

On April 23, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-4), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following record review is taken from plaintiff's brief, Docket Entry No. 20 at pages 2-7:

### 1. Medical Records

Claimant had a chest x-ray on January 5, 2010 revealing old granulomatous disease, increased interstitial marking and hyperinflated lung fields suggestive of COPD. (Tr. 412). She was diagnosed with COPD in addition to common cold, asthma, tobacco use, allergic rhinitis and cervical disc disorder with myelopathy on January 26, 2010. (Tr. 411). Chest x-ray was sent to Perdue Farms and she was taken off work to allow resolution of her upper respiratory infection and COPD. (Tr. 411, 413).

On February 12, 2010, Ms. Strode went to Dr. P. K. Jain with left hip pain along with crepitus, bursitis and trochanteric tenderness. Sinus CT showed mucosal thickening as well as a retention cyst or polyp in the right maxillary sinus. (Tr. 407).

On April 3, 2010, Kimber Logan performed trigger point injections in Plaintiff's left shoulder. (Tr. 389).

On February 24, 2011, Ms. Strode saw Kimber Logan, PA-C complaining of nine days of intermittent chest pain. She rated her pain a 9 of 10 in intensity under the right breast. She was diagnosed with asthma with 80% oxygen saturation on room air. (Tr. 330-333).

Plaintiff received treatment from the Perdue Wellness Center from January 2010 to December 2011. (Tr. 254-279). In December 2010, she was given a steroid pack and advised to use moist heat for cervicalgia. (Tr. 267). She was treated for back strain, bronchitis, sinusitis, pleurisy, COPD, vertigo, poorly controlled hypertension, fatigue, depression, anxiety and panic disorder. In February 2011, she complained of fatigue and depression for several months. (Tr. 263). In June and July 2011, she was seen for work related back strain. She had bladder prolapse from recent surgery at that time. She was on modified duty at work secondary to back injury. Straight leg raise was mildly positive. She was assessed with lumbar strain with radiculopathy left lower extremity and bladder prolapse. She was referred to an OB/GYN and MRI of the lumbar spine was ordered. (Tr. 258-259). In December 2011, EMG of the left lower extremity was ordered for possible lumbar compression. (Tr. 255).

In November 2011, Ms. Strode was evaluated by James Talmage, M. D. for neck and low back pain. When on Oxycodone, pain in her neck and low back improved. (Tr. 700). Off of pain medication, her pain was 7 of 10 to 10 of 10 on a pain scale of 0-10. (Tr. 699). On exam she had reduced back extension. X-rays were performed due to unexplained atrophy in her left lower limb. X-rays showed degenerative disc disease in her lower back and degenerative joint disease in both hips. She was assessed with mechanical low back pain, not work related. (Tr. 699-701).

Plaintiff was treated at Overton County Health Department on a regular basis from January 25, 2012 through August 27, 2013. She received general care and was assessed with hypothyroidism, osteoporosis, COPD, depression, hypertension and left eye injury. Lab work was performed to aid in diagnosis and mammograms revealed only benign calcifications. (Tr. 443). Labs dated January 31, 2012 and June 28, 2012 revealed elevated TSH, cholesterol, triglycerides, VLDL Cholesterol, LDL Cholesterol, and LDL/HDL ratio. (Tr. 433, 469). (Tr. 426-443, 467-472, 529-533, 535-553, 696-697).

On February 21, 2012, Dr. Donita Keown completed a consultative examination. Plaintiff complained of neck and low back pain and reported use of a Ventolin inhaler. She described her neck pain as constant and radiating into the arms and shoulders. The low back pain had worsened over the previous year and radiated into the hips and lower extremities. She had stiffness in both hips and was found to have osteoporosis by history. Mild kyphosis was seen in the thoracic spine on exam. Range of motion of the bilateral hips and thoracolumbar spine were decreased. She was diagnosed with mild COPD, tobacco abuse, chronic neck and low back complaints, left hip pain, osteoporosis, hypothyroidism and urinary incontinence resolved with bladder surgery. Pulmonary function studies were performed and indicated a FEV-1 of 2.51 and FVC of 3.04. (Tr. 445-447). Dr. Donita Keown opined that Ms. Strode could sit, walk or stand 6 hours in an 8 hour workday and perform occasional lifting of 25 to 30 pounds and frequent lifting of 10 to 15 pounds. (Tr. 447).

On March 14, 2012, Ms. Strode was evaluated by Jerrell Killian, M. S. and Dr. Carolyn Valerio. Ms. Strode reported quitting school after 9th grade and getting married to escape an abusive family. She had a history of daily panic attacks that had decreased on Paxil if she stayed away from public places. Dr. Carolyn Valerio found that Plaintiff had been suffering from major depression due to abuse during childhood and into her marriages as well as other difficulties as an adult. She may have had an episode of major depression following the birth of her first child, but since that time had suffered from depression, NOS. She had been suffering from panic attacks at home and publicly. She was assessed with depressive disorder, NOS and panic disorder with agoraphobia. (Tr. 455-458). Dr. Valerio found that adaptability was Ms. Strode's major issue and this was moderately impaired. It was also noted that it was an issue that she had not availed herself of formal mental health treatment. (Tr. 458).

Ms. Strode was evaluated at Volunteer Behavioral Health Care System (VBHCS) on July 30, 2012. She reported panic attacks beginning in 2005 when her daughter was assaulted by her husband. They were unexpected and lasted 30 minutes to 1 hour. She reported her moods being up and down, poor sleep, and ten pound weight gain over a three month period. She was diagnosed with panic disorder with agoraphobia and depressive disorder NOS. (Tr. 485-491). On November 19, 2012, she returned to VBHCS and was diagnosed with depressive disorder NOS and panic disorder with agoraphobia. (Tr. 516). On February 18, 2013, she reported she was living with her daughter and was homeless with continued anxiety, symptoms of ADHD, and extreme grogginess with excessive sleep. (Tr. 560). She was diagnosed with bipolar disorder, most recent episode manic, moderate. Ms. Strode was treated with individual counseling. During her sessions, she reported that she no longer drove due to her panic attacks and she was not able to watch her grandchild due to stress. (Tr. 704). A GAF of 55 was assigned on several occasions. (Tr. 485, 492, 496, 516, 630, 636, 643, 650, 693).

5

MRI of the lumbar spine dated December 26, 2012 revealed mild facet hypertrophy L4-5 with no evidence of disc herniation or spinal stenosis. (Tr. 534).

On June 3, 2013, Ms. Strode was seen at the Overton County Health Department complaining of arthritis pain in multiple areas including the back, neck, hips and knees. (Tr. 535).

Dr. Cox performed a consultative examination at Ms. Strode's request on November 7, 2013. Upon examination, Dr. Cox found Ms. Strode to have reduced range of motion in her lower back, with ability to flex forward 80 degrees, extend 15 degrees, and flex to both sides 20 degrees. Dr. Cox assessed Ms. Strode with COPD with an asthmatic component, cervical degenerative disc disorder, lumbar degenerative disc disorder, and bipolar disorder. (Tr. 727-728). Dr. Cox opined that Ms. Strode was restricted to lifting 10 pounds occasionally, less than 10 pounds frequently, stand and walk 2 hours per day, sit about 4 hours per day, limited in her lower extremities, will need to alternate sitting and standing to relieve back pain, would frequently have pain severe enough to interfere with her concentration, will need to take breaks every 2 hours, will be absent from work more than four times per month, and because of her lumbar back condition should never, crouch, crawl, climb, balance or kneel. She should avoid all exposure to dust, perfumes, fumes, odors, gases, solvents, cleaners and soldering fumes. (Tr. 723-726).

On September 17, 2012, Ms. Strode reported poor sleep, avoidance of crowds, and panic attacks three times per week to VBHCS. (Tr. 514). She had been put on Trazadone and Citalopram on July 12, 2012. (Tr. 515). In November, Ms. Strode reported improved mood. On November 19, 2012, Ms. Strode was assessed to have a GAF of 55. (Tr. 516). On December 10, 2012, Ms. Strode reported she went 10 days without bathing or combing her hair. Her friends tell her her moods are polar opposites on a daily basis. She talks non-stop and then just quits. (Tr. 516).

On January 7, 2013, Ms. Strode was referred by her counselor for case management. (Tr. 554). On April 10, 2013, when seen at Volunteer Behavioral Health Care, Ms. Strode reported that she had continuing anxiety, that she had stopped Valproic acid because it made her too groggy and that she been nine months free of substance abuse. (Tr. 566).

On March 18, 2014, Claimant was seen for joint and back pain as well as anxiety at the Overton County Health Department. She had crepitus of her knees and hips on exam. She was assessed with lumbago, COPD, tobacco disorder, anxiety and obesity. She was trying to quit smoking. Ibuprofen 600 mg twice daily was prescribed along with follow-up with the mental health center and a fasting lab appointment. (Tr. 7-8).

## 2. Hearing Testimony

Ms. Strode testified that she could not vacuum and mop because it hurt too bad. (Tr. 48). She further testified that she could only sit and stand 15 minutes at a time. (Tr. 49). She stated that her panic attacks were so bad on a couple of days per week she could not get out of bed. (Tr. 50). After the disabling impact of her panic attacks, Ms. Strode testified her back and hips kept her from working. (Tr. 50). She wakes up several times a night with pain in her hips. (Tr. 51). With her COPD and asthma when she walks she gets short of breath. (Tr. 51). She has four to five nights per week where she wakes up because of the pain. She described the pain as excruciating, a constant, throbbing pain. (Tr. 53). Without Ibuprofen it is 8-9 on a scale of 0-10 and with Ibuprofen it lowers to a 7. (Tr. 53). She has numbness and tingling in her left leg. (Tr. 54). She lies down two and one-half hours per day to get relief of back and hip pain. (Tr. 57).

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). While this is a deferential standard, it is not a trivial one; a finding of substantial evidence must "take into account whatever in the record fairly detracts from its weight." Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). Nevertheless, the SSA's decision must stand if substantial evidence supports the conclusion reached, even if the record contains substantial evidence that would have supported an opposite conclusion. E.g., Longworth v.

Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age,

education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520, 416.920. "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry ... the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

9

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred in rejecting the opinion of Dr. Cox, who performed an independent medical examination of plaintiff on November 7, 2013 and opined that plaintiff did not retain the physical capacity for full-time work. (Tr. 723-28) While no particular deference is owed to any one-time examiner, the regulations establish that, "[a]s a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination...." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1)). Nevertheless, an ALJ is not required to give good reasons for rejecting the opinion of a one-time consultant; this procedural requirement extends only to treating sources. Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007). Rather, the ALJ's weighing of such opinions must simply be supported by substantial evidence in the record, without being inconsistent with the governing regulations. Plaintiff argues that the ALJ's rationale for rejecting Dr. Cox's opinion -- because he was not a treating physician and his opinion conflicts with the opinions of the consultative examiner, Dr. Keown, and the nonexamining consultants -- is not sufficient to justify the rejection, in light of the support Dr. Cox's opinion receives from his own examination results, the report of Dr. Talmage (Tr.

10

699-701), and the December 2012 MRI which revealed "[m]ild facet hypertrophy L4-5 with no evidence of disc herniation or spinal stenosis." (Tr. 534) However, Dr. Talmage's November 2011 examination (for purposes of establishing whether plaintiff suffered a work-related injury) occurred prior to plaintiff's alleged disability onset date, and was notable only for findings of mechanical back pain that did not result from an injury and unexplained atrophy in the left leg. (Tr. 701) As to the December 2012 MRI, it revealed findings so mild that the ALJ in fact cited it as a reason to reject Dr. Cox's restrictive opinion. (Tr. 30) The ALJ gave full consideration to Dr. Cox's opinion, following the regulatory factors for weighing opinion evidence set out in 20 C.F.R. § 404.1527(c). (Tr. 30-31) No more particular rationale for the weight given the opinions of non-treating sources is required. See Norris v. Comm'r of Soc. Sec., 461 Fed. Appx. 433, 439 (6th Cir. Feb. 7, 2012). The undersigned finds no error here.

Plaintiff next argues that the ALJ erred in failing to find that she has a severe impairment related to her lumbar degenerative disc disease and degenerative joint disease of the left hip, citing the x-ray evidence referenced in Dr. Talmage's treatment note and the December 2012 MRI. However, Dr. Talmage's note states that: "Her hip x-ray showed minimal degenerative arthritis that is bilaterally symmetric and no problem in the left hip or pelvis. Low back x-rays show less than expected age related degenerative change with no significant pathology." (Tr. 701) Moreover, as previously noted, the December 2012 MRI contained only minimal findings. Based on this objective evidence, the undersigned finds no error in the ALJ's determination that these impairments were nonsevere. Even if it were error, the ALJ clearly proceeded to consider the effects of plaintiff's nonsevere back and hip impairments at subsequent steps of the sequential evaluation, as he assessed the related

exertional limitation to light work, in line with Dr. Keown's opinion, "[o]ut of an abundance of caution and treating the claimant's testimony in the most favorable light[.]" (Tr. 30) Therefore, any error in the severity determination would be harmless. See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).

Finally, plaintiff argues that the ALJ erred in failing to give adequate reasons for rejecting her testimony that her pain and anxiety symptoms are debilitating. She argues that her hearing testimony is consistent with her reports of pain and anxiety symptoms to her healthcare providers, and is also consistent with the reports of Dr. Talmage and Dr. Cox, who found significant problems with her back. However, as mentioned above, the objective findings of hip or back abnormalities are minimal. Nonetheless, after detailing plaintiff's hearing testimony, the ALJ found as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.... The claimant has several physical and mental impairments but these do not reasonably appear to preclude all work activity. She asserted she stopped work after an injury there but there was no documented treatment of a work injury around her alleged onset date. She had not tried to find work since. She denied being able to vacuum or mop but said she did laundry and cooked without problem. She alleged the inability to lift more than ten pounds or stand and walk for long. However, there were no objective studies of advanced osteoarthritis. Instead, it was described as early osteoarthritis. She complained of difficulty breathing that limited her activities but continues to smoke. Pulmonary function tests showed values almost at the predicted level. She uses an inhaler and testified she was not allowed to use one at work.

With regard to her panic attacks, she testified they occurred three or four

12

> times a week. She acknowledged a decrease in frequency with the use of Paxil. She also acknowledged improvement with therapy. On October 16, 2013, her concentration was noted to be poor but when seen at the psychological exam, she demonstrated better than adequate reasoning and comprehension. She was able to recall four items after 45 minutes.

(Tr. 29) The ALJ then reviewed the opinion evidence bearing on plaintiff's physical condition, all of which supports the notion that plaintiff could perform at least the light level of exertion which the ALJ found her limited to, except the opinion of Dr. Cox, discussed *supra*. (Tr. 29-30) He next discussed the opinion evidence bearing on plaintiff's mental condition, which supports the notion that plaintiff had moderate difficulty adapting to change, moderate difficulty interacting with co-workers, and marked difficulty interacting with the public. Finally, the ALJ considered the opinion of a supervisor at plaintiff's last place of employment, who stated that she had been sent home or missed work several times due to panic attacks, and opined that if her condition had not improved, most employers would be unwilling to employ her. The ALJ found that "[t]his opinion is not a medical opinion, but has been considered in setting the residual capacity, which includes the inability to work with the general public and the ability to sustain limited superficial interactions with co-workers and supervisors." (Tr. 31) The ALJ found that with such limitations, plaintiff could return to her past job as she actually performed it and as it is generally performed (id.), but also made alternative findings of other jobs in the economy which she would be able to perform in light of her age, education, work experience, and residual functional capacity. (Tr. 32)

The weighing of a claimant's credibility is firmly within the ALJ's province, and the finding that results is due great weight and deference on judicial review. See, e.g.,

13

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Id. Confronted with such contradictions in this case, the ALJ appropriately found plaintiff to be limited by the symptoms of her severe impairments, but not so limited as to be totally disabled. Substantial evidence supports this finding, plaintiff's testimony notwithstanding. The undersigned finds no error here.

In sum, the decision of the ALJ is supported by substantial evidence on the record as a whole. That decision should therefore be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 26th day of August, 2016.

                                       s/ John S. Bryant
                                       JOHN S. BRYANT
                                       UNITED STATES MAGISTRATE JUDGE